IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


JERRY LEE HAWKINS                                                                                  PLAINTIFF

   v.                                    Civil No. 4:09-cv-04118

SHERIFF JERRY CRANE; JOHNNY
GODBOLT, Detention Administrator;
LT. BRANDON SMITH; OFFICER
JULIAN BEASELY; CHARLES "CHUCK"
DAVIDSON; SPENCE "MACK" McMORRIS;
OFFICER DUNHAM; and SGT. BLAND                                                        DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Jerry Lee Hawkins (hereinafter Hawkins), pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Hawkins is currently an inmate of the Arkansas Department of Correction (ADC), East Arkansas Regional Unit, in Brickeys, Arkansas. The events that are the subject of this lawsuit occurred while Hawkins was incarcerated in the Hempstead County Detention Center (HCDC) in Hope, Arkansas. Specifically, Hawkins maintains that on October 15, 2009, the Defendants failed to protect him from attack by a fellow inmate.

The Defendants have filed a motion for summary judgment (ECF No. 67). Hawkins filed a response (ECF No. 80) and a cross-motion for summary judgment (ECF No. 81). Defendants filed a response (ECF No. 89) to Hawkins' motion.    The motions are now ready for decision.

**1. Background**

Hawkins was booked into the HCDC on August 16, 2009. *Plaintiff's Exhibit* (hereinafter *Plff's Ex.*) B-1 (ECF No. 82-2). That day, Hawkins asserts that he told Smith, Beasley, and Harris that he had enemies in the facility. (ECF No. 83 at pg. 1). With a few days, Hawkins states he made an enemy alert list on an inmate complaint form to be posted at the facility. *Id.*

According to Hawkins, he submitted enemy alert lists on HCDC inmate complaint forms on September 12, 2009, and September 25, 2009. (ECF No. 81-1)(sworn declaration of Hawkins); *Plff's Ex.* B-7 (ECF No. 82-2) (list dated 9/12/09); *Plff's Ex.* B-9 (ECF No. 82-2)(list dated 9/25/09). While Hawkins asserts that each list contained Walter Nabors' (hereinafter Nabors but referred to in some of the exhibits as Neighbors or Neghbor) name, (ECF No. 81-1)(sworn declaration of Hawkins), the complaint sheet dated September 12th, does not contain Nabors' name, *Plff's Ex.* B-7 (ECF No. 82-2). The complaint sheet dated September 25th, does contain both Walter Nabors' and Phillip White's (hereinafter White) names. *Plff's Ex.* B-9 (ECF No. 82-2). Both lists are nonspecific and contain in several places the notation "etc." *Plff's Ex.* B-7 (ECF No. 82-2) (list dated 9/12/09); *Plff's Ex.* B-9 (ECF No. 82-2)(list dated 9/25/09). There are no notations on either complaint form to indicate it was received or reviewed by the Defendants. Hawkins also submitted an inmate complaint sheet dated June 12, 2010, listing his enemies. *Plff's Ex.* A-3 (ECF No. 84). The list includes "Neghbor" and White. *Id.*

On some unspecified date, but prior to October 14th, Spence McMorris (McMorris) and Charles Davidson (Davidson) indicate they were instructed to move Hawkins from H-pod to F-pod. *Defendants' Exhibits* (hereinafter *Defts' Ex.*) B & C. When they got to F-pod, Hawkins stated that Nabors was on his enemies list. *Defts' Ex.* B at ¶ 6. McMorris then asked Nabors if he and Hawkins

were enemies. *Id.* at ¶ 7. Nabors responded: "no, but that's what he said." *Id.* Nabors then made a comment about he and Hawkins being "kin." *Id.* at ¶ 8. McMorris understood this to mean the two were relatives. *Id.* According to McMorris, both Nabors and Hawkins then laughed. *Id.* at ¶ 9. Davidson recalls asking Hawkins whether he and Nabors were enemies and Hawkins replying negatively. *Defts' Ex.* C at ¶ 7.

McMorris called Officer Bland (Bland) and had her check to see if Hawkins had an enemies list and if Nabors was on it. *Defts' Ex.* B at ¶ 10. Bland could not find an enemy list for Hawkins. *Id.* at ¶ 11. McMorris then asked Hawkins for a copy of his enemies list "and he could not produce one." *Id.* at ¶ 12. Since there was no enemy list and both Nabors and Hawkins were treating the "entire matter was a joke," McMorris placed Hawkins in F-pod. *Id.* at ¶ 13.

A few minutes later, they received a call about "Hawkins getting into some sort of incident with someone he had been put into the pod with." *Defts' Ex.* C at ¶ 9. They then moved Hawkins to a cell by himself. *Id.* at ¶ 10.

On October 14, 2009, Lt. Smith (Smith) ordered inmates Nabors and White into H-pod because of the volume of juveniles Defendants were receiving. *Plff's Ex.* A-2 & C-3 (ECF No. 84)(hereinafter *Plff's Ex.*). Johnny Godbolt (Godbolt) was aware of Hawkins' enemy alert list. *Id.* According to Godbolt, the enemy list is "noted and posted." *Plff's Ex.* A-3 (ECF No. 84). Julian Beasley (Beasley) and Officer Harris (Harris) moved the inmates. *Plff's Ex.* A-1 (ECF No. 81-2); *Plff's Ex.* A-3 (ECF No. 81-2). Hawkins maintains he told these officers that Nabors was on his enemy list. *Plff's Ex.* A-3 (ECF No. 81-2).

On October 15th, Officer Matthew Dunham (Dunham) completed an incident report. *Defts' Ex.* A. Dunham indicated that he received a call at 11:30 a.m. that there was a fight in H-pod. *Id.*

Dunham met Beasley and Harris at the doors leading to H-pod and entered.  *Id*.  Dunham reported that once he entered the pod he:

> observed inmates Nabors and Hawkins on the floor fighting.  I then told the inmates to break it up and they did not comply.  So I then used force by pepper spraying both of the inmates.  Once sprayed I then grabbed inmate Nabors and escorted him out of H-Pod.  Both inmates were giv[en] the chance to shower and wash the pepper spray off of them.  Inmates Nabors and White were moved to C-pod and an inmate enemy alert was posted.

*Id.*

A video of the incident exists.  *Defts' Ex.* D.  The quality of the video is poor.  *Id.*  Additionally, the time stamp counter displayed on the video appears to jump.  *Id.*  For example, it appears to go from 11:13:53 to 11:20:33.  *Id.*  The tape shows four inmates in the day-room with a table against the wall.  *Id.*  Three doors are visible; two appear to open into cells and the third appears to open to a hallway.  *Id.*  According to a narrative written by Lieutenant Glover, inmate Charles Flenory (Flenory) is standing at the table, White is seated at the table, Nabors is standing in the doorway of the cell farthest from the camera, and Hawkins is standing with his back to the camera.  *Plff's Ex.* B-17 (ECF No. 82-2).

Nabors lowers his head and charges Hawkins in the torso area.  *Defts' Ex.* D.  The two struggle for a short time and then go to the floor.  *Id.*  The two continue to wrestle on the floor with their bodies locked together and their arms and legs flailing.  *Id.*  Flenory gets up, apparently calls for help on the intercom, and then enters a cell.  *Id.; Plff's Ex.* B-17 (ECF No. 82-2).  For a short span of time, the open cell door obstructs partially the view of Nabors and Hawkins.  *Deft's Ex.* D.  White remains seated at the table throughout the incident although it appears he was struck by flailing legs several times.  *Id.*

Dunham enters the day-room and administers a short burst of pepper spray to Nabors and

Hawkins. *Defts' Ex.* D; *Plff's Ex.* B-17 (ECF No. 82-2). A second officer is at the door of the cell. *Defts' Ex.* D. Dunham, with the assistance of the second officer, then escorts Hawkins out of the day-room. *Id.* The other inmates are moved out of the area. *Id.* The video provided to the Court ends at this point. *Id.* As a result of the incident, both Hawkins' and Nabors' visitation rights were suspended for thirty days. *Plff's Ex.* B-18 (ECF No. 82-2).

With respect to any injuries he suffered, Hawkins indicates a prior injury to his left wrist was aggravated when he was attacked by Nabors. (ECF No. 80 at pg. 7). He states he has not had the full use of his left wrist since the attack. *Id.*

Hawkins has submitted copies of inmate medical request forms that indicate he injured his left wrist, right shoulder, and back when he fell off a top bunk in April of 2009. *See e.g.,* (ECF No. 82-1 at pgs. 12, 14, 15). After the October 15th incident, he continued to seek treatment for his left wrist. *Id.* at pgs. 26, 35. In these requests, he indicated the problem started with his fall from the top bunk. *Id.* ADC records indicate that as recently as March of 2011 Hawkins has been restricted to one arm/hand duty because of his left wrist. *Plff's Ex.* AA-BB (ECF No. 82-2).

On January 6, 2010, Hawkins was moved to F-pod by McMorris and Davidson. *Plff's Ex.* E-1 & E-2 (ECF No. 84). Hawkins was moved because they needed room for a juvenile. *Id.* at E-3. Godbolt gave permission for the move. *Id.* Hawkins was placed in F-pod cell 8 with Nabors. *Id.* Hawkins stated that Nabors was on his enemy list. *Id.* McMorris called Bland to verify this and Bland found no list with Nabors' name on it. *Id.* McMorris then asked Nabors if he and Hawkins were enemies. *Id.* Nabors replied: "That's what he says, I don't know anything about it." *Id.* McMorris states that Nabors also said they were cousins and then both laughed. *Id.*

According to Davidson, Hawkins was locked down with Nabors. *Plff's Ex.* G-3 (ECF No.

84). A few minutes later, they received a call from the control room that Hawkins was "having problems with the inmate we just locked him down with." *Id.* Hawkins was moved to a cell by himself and locked down "where he could be protected from anyone if he had a problem with them." *Id.* Hawkins was incarcerated in F-pod for two days. *Id.* at F-2.

In their affidavits, *Defts' Exs.* B & C, McMorris and Davidson do not indicate the date on which they moved Hawkins from H-pod to F-pod into a cell with Nabors. However, in the answers to interrogatories they refer to the move that occurred on January 6, 2010. *Plff's Ex.* E-1 & E-2 (ECF No. 84). The first move that occurred prior to October 14th and the January 6th incident are so similar it is not entirely clear whether McMorris and Davidson moved Hawkins on two separate occasions to F-pod with Nabors or if the move referenced in the affidavits actually occurred after the October 15th fight rather than before.

According to Defendants, Hawkins has been incarcerated at the HCDC on twenty occasions. *Plff's Ex.* C-3 (ECF No. 84). During the various incarcerations, Hawkins was housed in almost all of the pods and in the holding cells. *Id.*

### 2. Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3. Arguments of the Parties

First, with respect to the claims against Defendants Davis, McMorris, Bland, and Smith, Defendants argue no specific allegations have been made against them. Second, with respect to Dunham, Defendants argue that no failure to protect claim has been made against him. Third, with respect to the failure to protect claim, Defendants argue there is no evidence that they were deliberately indifferent to Hawkins' safety. Finally, Defendants argue they are entitled to qualified immunity.

Hawkins maintains Defendants exhibited deliberate indifference to his need for protection from physical assault. Even after the first assault, Hawkins asserts the Defendants failed to post his enemy alert list. In his mind, this failure is established by the fact that Bland could not locate the list on January 6, 2010. As a result, Hawkins points out he was moved into a cell with Nabors despite the October 15th physical assault.

### 4. Discussion

Section 1983 provides a cause of action against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Qualified immunity is a defense available only to government employees sued in their individual capacity. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

The qualified immunity inquiry consists of two questions: "(1) whether the facts shown by

the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Langford v. Norris*, 614 F.3d 445, 459 (8th Cir. 2010). The order in which these questions are addressed is left to the discretion of the judge. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "A prisoner's conditions of confinement, including the safety measures taken to protect prisoners, are subject to scrutiny under the Eighth Amendment." *Davis v. Oregon County, Missouri*, 607 F.3d 543, 548 (8th Cir. 2010). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). This right was clearly established in 2009. *See e.g., Norman v. Schuetzle*, 585 F.3d 1097, 1103 (8th Cir. 2009)(clearly established in 2005 that prison officials have a duty to protect an inmate from attack by other inmates). As the answer to the second prong of the qualified immunity determination is yes, it must be determined whether the Defendants' actions, viewed in the light most favorable to Hawkins, violated his Eighth Amendment rights.

To prevail on his failure to protect claim, Hawkins must show: (1) that he was incarcerated under conditions posing a substantial risk of harm, and (2) each Defendant knew of and disregarded an excessive risk to his safety. *Berry v. Sherman*, 365 F.3d 631, 634 (8th Cir. 2004). "The second requirement is a subjective test; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010)(internal quotation marks and citation

omitted). "An official's negligence alone is insufficient to meet the subjective component because the official must recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis*, 607 F.3d at 549 (internal quotation marks and citation omitted).

"When considering the first requirement, the assailant's conduct can provide the court the most probative evidence of the degree and type of risk that [the inmate] faced." *Nelson v. Shuffman*, 603 F.3d 439, 447 (8th Cir. 2010). In this case, the summary judgment record provides little information about Nabors' conduct prior to the October 15th incident. The only information regarding Nabors' conduct is that at some unspecified date prior to October 15th, when Nabors and Hawkins were put in the same cell, Hawkins had to be removed after just a few minutes. Davidson's affidavit, although it is about this incident, does not indicate which inmate was the aggressor or even what necessitated Hawkins' move out of the cell. In fact, the record does not even indicate why Nabors and Hawkins were allegedly enemies. There is no suggestion that Nabors had a history of being violent, aggressive, or out of control. There is no suggestion that jail conditions or procedures created a substantial risk to the safety of inmates.

The September 12th enemy alert list Hawkins maintains was provided to the jail contains the names of a number of inmates housed in four separate pods, A-pod, B-pod, C-pod, and F-pod. *Plff's Ex.* B-7 (ECF No. 82-2). As mentioned above, the list of enemies is nonspecific. The September 25th lists also contains the names of individuals in the same four pods and is nonspecific. *Plff's Ex.* A-9 (ECF No. 81-2). The lists contain no indication of why the listed individuals are Hawkins' enemies--merely containing the blanket statement that the individuals want to injure or kill him.

Each prison official's entitlement to qualified immunity must be addressed separately. The facts presented did not put Sheriff Crane on notice that Nabors presented a substantial risk of harm

to inmates in the general population or to Hawkins in particular. Nothing suggests that Nabors had a known propensity toward violence or for attacking other inmates. Nothing in the record indicates Hawkins was at particular risk because he was an informant or had committed a crime that was viewed with particular disfavor by fellow inmates. There is no indication Hawkins ever spoke to, or communicated with, Sheriff Crane regarding an enemy alert list or one or more inmates being prone to violence towards him. There is no evidence of a history of other attacks on Hawkins or others in the jail. In short, Sheriff Crane was not in the possession of facts sufficient to exhibit deliberate indifference to inmate health and safety. Sheriff Crane cannot be "held liable for a prisoner attack unless he was subjectively aware of the risk and recklessly ignored it." *Norman*, 585 F.3d at 1105. Sheriff Crane is entitled to qualified immunity.

With respect to Dunham, I agree that no failure to protect claim has been made against him. While Dunham broke up the fight between Nabors and Hawkins on October 15th, Hawkins makes no claim that Dunham used excessive force against him. Dunham was not involved in the decision to move Nabors and White to H-pod or in moving them to H-pod.

With respect to Bland, the only conduct attributable to her is that she failed to locate Hawkins' enemy list when he was moved on January 6, 2010. Her statement that she was unaware of the existence of Hawkins' enemy list is uncontradicted. Nothing in the record suggests she was subjectively aware of a substantial risk the risk of attack to Hawkins in particular, or to other inmates in general, and recklessly ignored it. She is entitled to qualified immunity.

As noted above, Smith made the decision on October 14th to move Nabors and White into H-pod. The facts, however, are insufficient to put Smith on notice that Nabors presented a substantial risk of harm to Hawkins or that there was an overall risk of inmate violence. The enemy

alert lists Hawkins provided detention center officials list multiple inmates in multiple pods. *Plff's Exs.* B-7 (ECF No. 82-2) & A-9 (ECF No. 81-2). Nothing in the summary judgment record explains why these inmates were Hawkins' enemies, or suggests there was any history of violence towards Hawkins prior to the October 15th fight, or that the situation in the jail was such that there was an overall risk of inmate violence. Smith is entitled to qualified immunity.

      Beasley was one of the two officers who moved Nabors on October 14th. According to Hawkins, he told these officers that Nabors was on his enemy list. Beasley could not recall if Hawkins stated that Nabors and White were on his enemy list on October 14th. *Plff's Ex.* D-1 (ECF No. 84-4). However, during Hawkins' stay at the HCDC, Beasley stated Hawkins referred to his enemy list on different occasions. *Id.* Beasley did not act with the requisite culpable state. That is, he did not "actually know of the substantial risk and fail to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007)(internal quotation marks and citation omitted).

      Godbolt was not involved in the moves on October 14th. Nor is there any indication that he knew what inmates were being moved on that day. Godbolt did order the move on January 6, 2010. In responding to interrogatories, Godbolt indicated he was aware of Hawkins' enemy alert list. *Plff's Ex.* A-2 (ECF No. 84-1). In fact, Godbolt states that "[e]very time Mr. Hawkins comes to jail he has a list of people that have gone to ADC that he alleges are his enemies." *Id.* The lists were to be noted and posted. *Plff's Ex.* A-3 (ECF No. 84-1). Despite this, no evidence suggests a history of inmates being prone to violence, no mention is made of any previous fights between inmates, or that security was so lacking it was reasonable to assume inmates were in danger of attack. There is no indication that Godbolt was aware of an obvious, substantial risk to inmate safety.

      Nor can Godbolt be held accountable for actions taken by other detention center employees.

"In a § 1983 case, an official is only liable for his ... own misconduct and is not accountable for the misdeeds of [his] agents under a theory such as respondeat superior or supervisor liability." *Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir. 2010).

Davidson and McMorris moved on two occasions moved Hawkins to F-pod. Hawkins orally advised them that Nabors was on his enemy list. However, Nabors denied it, stated he and Hawkins were "kin," and they both laughed. Given these circumstances, Davidson and McMorris were not aware of a substantial risk that Nabors would attack Hawkins. More importantly, as discussed above, the facts do not suggest there was an overall risk to inmate safety. There is no evidence of deliberate indifference to inmate health and safety on Davidson's and McMorris' parts. They are entitled to qualified immunity.

Finally, there was an entry of default made on May 3, 2011, against the remaining Defendant, Emanuel Harris. "When co-defendants are similarly situated, inconsistent judgments will result if one defendant defends and prevails on the merits and the other suffers a default judgment. To avoid such inconsistent results, a judgment on the merits for the answering party should accrue to the benefit of the defaulting party." *Angelo Iafrate Const. v. Potashnick Const., Inc.* 370 F.3d 715, 722 (8th Cir. 2004). In this case, Harris benefits from this rule. The cause of action asserted against him arose out of the same factual situation. He was one of the officers that moved Nabors and White on October 14th. I recommend that no default judgment be entered against Emanuel Harris in this matter.

### 5. Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (ECF No. 67) be granted and the case dismissed with prejudice. I further recommend that Hawkins' motion for summary judgment (ECF No. 81) be denied.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 7th day of February 2012.

                                                /s/ Barry A. Bryant
                                                HON. BARRY A. BRYANT
                                                UNITED STATES MAGISTRATE JUDGE